# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

OZCAN DALGIC,

    Plaintiff,

v.

MISERICORDIA UNIVERSITY,

    Defendant.

NO. 3:16-CV-0443

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion for Judgment on the Pleadings (Doc. 26) filed by Defendant Misericordia University ("Misericordia" or "Defendant"). Plaintiff Ozcan Dalgic ("Dalgic" or "Plaintiff"), an international student that graduated from Misericordia's Doctor of Physical Therapy Degree Program, commenced this action asserting claims of negligence regarding Misericordia's handling of his application for post-graduate employment in the United States. After answering Dalgic's Second Amended Complaint, Misericordia now seeks judgment on the pleadings, arguing that Dalgic's negligence claims are legally deficient and otherwise barred by the statute of limitations. Because Dalgic's factual allegations sufficiently state plausible negligence claims and it is not apparent on the face of the Second Amended Complaint that the claims in this action are barred by the statute of limitations, Misericordia's Motion for Judgment on the Pleadings will be denied.

## I. Background

The facts as set forth in Plaintiff's Second Amended Complaint are as follows:

Dalgic was born in Turkey in 1980. (*See* Doc. 24, ¶ 7). Dalgic graduated college in Turkey with a degree in physical education in 2001. (*See id*. at ¶ 9). Dalgic subsequently obtained an F-1 visa which allowed him to enter the United States to study as a full-time student. (*See id*. at ¶ 10). In 2011, after Dalgic studied English at various institutions in the United States, he enrolled in Misericordia's Doctor of Physical Therapy Degree Program. (*See id*. at ¶¶ 11-14).

Dalgic, among other reasons, elected to attend Misericordia because it is a certified member of the Student and Exchange Visitor Program ("SEVP"), which authorizes an academic institution

to accept international students with F-1 visas. (*See id*. at ¶ 15). Students with F-1 visas that graduate from a SEVP-certified institution are eligible to participate in Optional Practical Training ("OPT"), a temporary period of post-graduation employment that is directly related to the major area of study of international students with F-1 visas. (*See id*. at ¶ 16). Acceptance to an OPT is typically a formality for international students graduating from an SEVP-certified institution. (*See id*. at ¶ 17). All SEVP-certified institutions are required to employ an authorized Designated School Official ("DSO"). (*See id*.). Jane Dessoye ("Dessoye") was Misericordia's DSO. (*See id*. at ¶¶ 3, 32). The DSO at a SEVP-certified institution is responsible for maintaining records on the Student Exchange Visitor Information System ("SEVIS"), the program by which the United States Citizenship and Immigration Services ("USCIS") monitors students with F-1 visas. (*See id*. at ¶ 18). The OPT application process is set forth in 8 C.F.R. § 214(f)(11)-(12). (*See id*. at ¶¶ 19-30). The OTP application process is initiated by the student requesting that the DSO provide a recommendation for OTP. (*See id*. at ¶¶ 22, 25). The OPT applicant must then submit a Form I-765 (Application for Employment Authorization) and Form I-20 (Certificate of Eligibility for Nonimmigrant (F-1) Status). (*See id*. at ¶ 20).

Dalgic met with Dessoye in late July 2013, five (5) months before his scheduled graduation, to discuss the OPT application process. (*See id*. at ¶¶ 34, 37). Dessoye explained that Dalgic's application would include a recommendation from Misericordia as well as I-765 and I-20 Forms that she would provide to Dalgic and direct him on how to complete and submit. (*See id*. at ¶ 35). Dessoye also assured Dalgic that Misericordia would timely file the recommendation with USCIS. (*See id*. at ¶ 36). Dessoye further advised Dalgic that he could not submit his OPT application until 90 days before graduation, which was scheduled for December 14, 2013. (*See id*. at ¶ 37). Pursuant to the regulations, Dalgic was required to submit his application packet within thirty days after Dessoye entered the recommendation for OPT. (*See id*. at ¶ 40). Unbeknownst to Dalgic, however, Dessoye prematurely recommended him for OPT on July 24, 2013. (*See id*. at ¶ 41).

Dalgic met with Dessoye again in early December 2013 in order to complete the OPT recommendation and obtain the necessary forms he needed to file as part of his OPT application. (*See id*. at ¶ 43). At this time, and as he had done in the past, Dalgic advised Dessoye that he planned to

2

participate in OPT at Carney Point Care Center in Carney Point, New Jersey. (*See id*. at ¶¶ 44). Although Dalgic completed the OPT recommendation form on December 5, 2013, Dessoye concealed the fact that she had already recommended him for OPT on July 24, 2013. (*See id*. at ¶¶ 45-47). Dessoye also provided Dalgic with the necessary forms to complete the OPT application at that time. (*See id*. at ¶ 48). Dalgic complied with Dessoye's instructions and submitted his application packet on December 10, 2013, but the documents were returned to Dalgic at the end of that month because the application packet provided by Dessoye listed an outdated filing fee. (*See id*. at ¶ 49). On January 7, 2014, Dalgic re-submitted his OPT application packet with the correct filing fee. (*See id*. at ¶ 51).

Dalgic graduated from Misericordia on December 14, 2013, and, thereafter, he obtained a license to practice physical therapy and secured full-time employment at Carney Point Care Center. (*See id*. at ¶¶ 52-53). Dalgic was scheduled to begin work in April 2014. (*See id*. at ¶ 53). On March 18, 2014, however, Dalgic received a letter from USCIS stating that his OPT application was denied because Dessoye prematurely recommended him for OPT outside the permissible time period set forth in the governing regulations and because Dalgic was recommended for OPT more than 30 days before he was instructed by Dessoye to submit the necessary forms. (*See id*. at ¶ 55). Thereafter, Dessoye repeatedly acknowledged to Dalgic, USCIS, and the Department of Homeland Security ("DHS") that she was at fault for the denial of the OPT application and that the mistake was beyond Dalgic's control. (*See id*. at ¶¶ 59, 61-64, 73-74). In a July 31, 2014 response to an email sent by Dessoye, DHS indicated, *inter alia*: (1) that the OPT recommendation submitted on July 24, 2013 was noted to have been made in error; (2) Dalgic's Form I-20 was reprinted on December 4, 2013 and submitted with his Form I-765; (3) Dessoye's recommendation for OPT was entered more than 30 days prior to the filing of the Form I-765; (4) "based on the SEVIS Form I-20 present in the filing materials, dated December 4, 2013, the intent to recommend [Dalgic] for employment authorization based on OPT is noted. However, more than 30 days had elapsed from the re-printing of the Form I-20 and the filing date of the Form I-765"; and (5) the second request for OPT made on January 22, 2014 did not satisfy the applicable regulations because it was made after Dalgic's Form I-765 was submitted. (*Id*. at ¶ 75 and Ex. "I").

As a result of the denial of his OPT application, Dalgic was not only unable to begin work,

3

he also lost his driver's license and was subject to investigation by DHS. (*See* Doc. 24, ¶¶ 56, 66, 72). Because he was unable to begin work, Dalgic had to stay at a friend's house without paying rent and he also had to borrow money from family and friends. (*See id*. at ¶¶ 70-71). To regain his F-1 visa status, Dalgic was required to re-enroll at Misericordia. (*See id*. at ¶ 77). Additionally, in order to remain in the United States, Dalgic had to obtain an attorney and go through lengthy legal proceedings before he finally became a permanent resident candidate by marriage in December 2015. (*See id*. at ¶ 77).

Based on the foregoing, Dalgic commenced this action in this Court on March 11, 2016. (*See* Doc. 1, *generally*). Dalgic has since amended his pleading twice, and the operative pleading is the Second Amended Complaint. (*See* Doc. 24, *generally*). Therein, Dalgic alleges claims against Misericordia for negligence (Count I) and negligent interference with prospective contractual relations (Count II). (*See id*., *generally*). Misericordia answered the Second Amended Complaint on January 26, 2017, (*see* Doc. 25, *generally*), and, shortly thereafter, filed the instant Motion for Judgment on the Pleadings. (*See* Doc. 26, *generally*). That motion is now fully briefed and ripe for disposition.

## II. Discussion

**A.    Legal Standard.**

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment "[a]fter the pleadings are closed -- but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate "if the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id*. In deciding a motion for judgment on the pleadings, the court "considers only the complaint, any attached exhibits, documents relied upon in the complaint, matters of public record, and any indisputably authentic documents." *Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 218 n.2 (3d Cir. 2016) (quotation and citations omitted). "Granting judgment on the pleadings is appropriate where the plaintiff has not alleged sufficient factual matter, accepted as true [and viewed in the light most favorable to the plaintiff], to state a claim to relief that is plausible on its face." *Id*. at 214 n.4 (alteration in original) (quotation and

4

citations omitted).

**B.      Misericordia's Motion for Judgment on the Pleadings.**

Misercordia raises three arguments in support of its Motion for Judgment on the Pleadings. (*See* Doc. 27, *generally*).  First, Misericordia contends that there is no general cause of action in Pennsylvania for negligent interference.  (*See id*. at 12-14).  Second, Misericordia maintains that Dalgic's negligence claims fail as a matter of law because his own conduct was the proximate cause for the denial of his OPT application.  (*See id*. at 14-17).  Finally, Misericordia asserts that Dalgic's claims are bared by the applicable statute of limitations.  (*See id*. at 17-18).

**1.      Negligent Interference with Prospective Contractual Relations.**

Misericordia argues that it is entitled to judgment on Dalgic's negligent inference with prospective contractual relations claim in Count II of the Second Amended Complaint because there is no general cause of action for such a claim under Pennsylvania law. (*See* Doc. 27, 12-14).

"Pennsylvania courts generally do not recognize a cause of action for 'negligent interference with a contract' and have explicitly held that such claims are barred by the economic loss doctrine." *Volunteer Firemen's Ins. Servs., Inc. v. Fuller*, No. 12-2016, 2012 WL 6681802, at *9 (M.D. Pa. Dec. 21, 2012) (citing *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175-76 (3d Cir. 2008); *Gittens–Altman, A.M.A. v. HCB Contractors*, No. 90-6908, 1992 WL 235737, at *2 (E.D. Pa. Sept. 8, 1992); *Aikens v. Balt. & Ohio R.R. Co.*, 501 A.2d 277, 278 (Pa. Super. Ct. 1985)).  "A limited exception to this bar is where a 'special relationship' exists among the parties." *Id*. (citing *Aikens*, 501 A.2d at 278); *see also L&M Beverage Co. v. Guinness Import Co.*, No. 94-4492, 1995 WL 771113, at *5 (E.D. Pa. Dec. 29, 1995) (plaintiff can proceed with a claim for "negligent interference with prospective contractual rights only if it was involved in a "special relationship" with [defendant] at the time of the alleged interference.").  A "'special relationship' is one involving confidentiality, the repose of special trust, or fiduciary responsibility." *Volunteer Firemen's*, 2012 WL 6681802, at *9 (quoting *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 952 (E.D. Pa. 1998)); *see also L&M Beverage*, 1995 WL 771113, at *5 ("Special relationship has been defined as a confidential or fiduciary relationship where one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either

5

because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other.").

Here, based on the allegations in the Second Amended Complaint, Dalgic has pled sufficient facts that plausibly support the existence of a special relationship between himself and Misericordia/Dessoye. (*See* Doc. 24, ¶¶ 15-50). Although it would be premature at this stage of the litigation to conclude that a special relationship in fact existed between these parties, Dalgic's factual allegations are sufficient to "raise a right to relief above the speculative level" such that the existence of a special relationship required to support his claim is "plausible on its face." *Sarsfield v. Citimortgage, Inc.*, 667 F. Supp. 2d 461, 469 (M.D. Pa. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *cf. Gjeka v. Del. Cnty. Cmty. Coll.*, No. 12-4548, 2013 WL 2257727, at *10-11 (E.D. Pa. May 23, 2013) (noting that Pennsylvania law is unclear on the existence of a fiduciary relationship between universities/professors and their students); *Fay v. Thiel College*, 55 Pa. D. & C. 4th 353, 362-63 (Pa. C.P. Mercer Cnty. 2001) ("Although it is true that a college does not owe its students an *in loco parentis* duty simply because of the college/student relationship, it is also true that a college can owe a particular student a special duty as a result of a special relationship that exists between the college and that particular student."). Judgment will not be granted in Misericordia's favor on Count II of Dalgic's Second Amended Complaint.

### 2. Proximate Cause.

Misericordia next argues that it is entitled to judgment on the pleadings with respect to both claims in the Second Amended Complaint because Dalgic's own negligent conduct was the proximate cause for the denial of his OPT application. (*See* Doc. 27, 14-17). More specifically, Misericordia asserts that, based on DHS's July 31, 2104 correspondence to Dessoye, Dalgic's OPT application was denied because, after the application was returned due to the improper filing fee, Dalgic failed to resubmit it within 30 days from the issuance of the Form I-20 on December 4, 2013 (despite having had time to do so). (*See id*. at 16). In essence, Misericordia argues that the OPT application was denied because of Dalgic's conduct which had nothing to do with Dessoye's premature submission of the OPT recommendation in July 2013. (*See id*.). Dalgic, in opposition, emphasizes that the only

6

reason provided by USCIS in denying his application for employment authorization in its March 18, 2014 letter was that he was recommended for OPT on July 24, 2013 and his application was submitted more than 30 days after that date. (*See* Doc. 28, 15-16). Given the reasoning set forth by USCIS in its March 18, 2014 letter denying his application, Dalgic argues that DHS's subsequent statements in the July 31, 2014 response to Dessoye creates, at most, a material issue of fact. (*See id*. at 17).

"A party suing for negligence must prove, *inter alia*, causation between the alleged wrongful act and the plaintiff's alleged injuries." *Chetty Holdings Inc. v. NorthMarq Capital, LLC*, 556 F. App'x 118, 121 (3d Cir. 2014) (citing *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1103 (Pa. 2012) (Todd, J., dissenting)). Causation consists of "cause-in-fact and legal, or proximate, cause." *Heeter v. Honeywell Int'l Inc.*, - - - F. App'x - - -, 2017 WL 3128488, at *2 (3d Cir. July 24, 2017) (citation and quotation omitted). "Proximate or legal causation is that point at which legal responsibility should attach to the defendant as a matter of fairness because the plaintiff has demonstrated that the defendant's act was a substantial factor or a substantial cause, as opposed to an 'insignificant cause or a negligible cause, in bringing about the plaintiff's harm." *Id*. (citation, quotations, and alteration omitted).

> Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a substantial factor in bringing about the harm inflicted upon a plaintiff. Pennsylvania law has long recognized that this substantial factor need not be . . . the only factor, *i. e.*, "that cause which . . . produces the result." A plaintiff need not exclude every possible explanation, and the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence.

*Wilson v. U.S. Sec. Assocs., Inc.*, - - - A.3d - - -, 2017 WL 3034031, at *19 (Pa. Super. Ct. July 18, 2017) (quoting *Jones v. Montefiore Hosp.*, 431 A.2d 920, 923-24 (Pa. 1981)). In determining proximate cause, consideration should be given to:

> (1) the number of factors other than the actor's conduct that contributed to producing the harm and the extent of their contribution; (2) whether the actor's conduct created a force or series of forces that were in continuous and active operation up to the time of the harm, or created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (3) the lapse of time between the actor's

7

>   conduct and the harm.

*Sikkelee v. AVCO Corp.*, - - - F. Supp. 3d - - -, 2017 WL 3317545, at *41 (M.D. Pa. Aug. 3, 2017) (quotation and citation omitted).

"Under Pennsylvania law, a 'judge may determine that no jury could reasonably differ as to whether the plaintiff has sufficiently established a causal link. In such cases, our trial courts are charged with performing their standard gatekeeping function in determining which cases should be permitted to be argued to a jury.'" *Heeter*, 2017 WL 3128488, at *2 (quoting *Toney v. Chester Cty. Hosp.*, 36 A.3d 83, 99 (Pa. 2011)). As such, the determination of proximate cause "should not be taken from the jury if the jury may reasonably differ as to whether the conduct of the defendant was a substantial cause or an insignificant cause." *Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977). Nonetheless, "nothing precludes a court from determining proximate cause as a matter of law if a jury could not reasonably differ on the issue." *Chetty Holdings*, 556 F. App'x at 121 (citing *Ford*, 379 A.2d at 114).

Dalgic has alleged sufficient facts that Misericordia's acts or omissions were the proximate cause of his injuries, *i.e.*, the denial of his OPT application. (*See* Doc. 24, *generally*). In particular, Dalgic alleges that Dessoye prematurely submitted his OPT recommendation well in advance of the permissible time period. (*See id.* at ¶¶ 27, 37, 41). As a result, Dalgic avers that he was advised by letter dated March 18, 2014 from USCIS that his OPT application was denied because the required recommendation was submitted outside the time frame set forth in the applicable regulations. (*See id.* at ¶ 55). While subsequent correspondence from DHS to Dessoye on July 31, 2014 may provide conflicting reasons for the denial of Dalgic's OPT application with those initially set forth by USCIS on March 18, 2014, (*see id.* at ¶¶ 55, 75 and Ex. "I"), resolution of these disputes is not appropriate on a motion for judgment on the pleadings. Thus, based on the well-pled allegations in the Second Amended Complaint, Dalgic has sufficiently alleged that Misericordia was a substantial factor in bringing about the claimed harm. *See, e.g., Latuska v. Bureau Veritas N. Am., Inc.*, 15-208, 2017 WL 1102651, at *4 (W.D. Pa. Mar. 23, 2017) (denying motion for judgment on the pleadings on negligence claim).

### 3. Statute of Limitations.

Lastly, Misericordia argues that judgment on the pleadings is warranted because Dalgic's negligence claims are barred by the statute of limitations. (*See* Doc. 27, 17-18). According to Misericordia, the commencement of this action on March 11, 2016 occurred beyond the statute of limitations because it is "patently clear" that the conduct giving rise to Dalgic's negligence claims was his untimely filing of the OPT application on January 9, 2014. (*See id.* at 17). Dalgic, conversely, contends that the complaint was timely filed within two (2) years of his receipt of the March 18, 2014 letter from USCIS denying his OPT application. (*See* Doc. 28, 19-21).

The statute of limitations on a negligence claim under Pennsylvania law is two (2) years. *See* 42 Pa. C.S.A. § 5524. While a defendant may properly raise a statute of limitations defense through a motion for judgment on the pleadings, *see Sikirica*, 416 F.3d at 224-26 (affirming district court's grant of judgment on the pleadings based upon the applicable statute of limitations), courts have found that a defendant "may raise the statute of limitations as a defense by way of a motion for judgment on the pleadings under Rule 12(c), [only] if the statute's application is apparent on the face of the complaint." *Tozer v. Darby PA*, No. 13-2005, 2014 WL 1378817, at *3 (E.D. Pa. Apr. 7, 2014); *see also Germinaro v. Fidelity Nat'l Title Ins. Co.*, 107 F. Supp. 3d 439, 449 (W.D. Pa. 2017).

"Generally, a statute of limitations period begins to run when a cause of action accrues; *i.e.*, when an injury is inflicted and the corresponding right to institute a suit for damages arises." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (citing *Wilson v. El–Daief*, 964 A.2d 354, 361 (Pa. 2009); *see also Vitale v. Buckingham Mfg. Co., Inc.*, 184 F. App'x 156, 158 (3d Cir. 2006) ("Pennsylvania's two-year statute of limitations for an injury caused by the wrongful act or negligence of another generally begins to run as soon as the injury is inflicted."). "'In most cases, the statute of limitations begins to run on the date the injury is sustained. Once the prescribed statutory period has expired, a plaintiff is thereafter barred from commencing suit.'" *Haines v. Jones*, 830 A.2d 579, 585 (Pa. Super. Ct. 2003) (quoting *Bradley v. Ragheb*, 633 A.2d 192, 194 (Pa. Super. Ct. 1993)). When properly invoked, however, the "discovery rule" acts "as an exception to this principle, and provides that where the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the discovery rule suspends, or tolls, the running of the statute of limitations."

9

*Gleason*, 15 A.3d at 484. The discovery rule thus tolls the limitations period until the "'plaintiff knows, or in the exercise of reasonable diligence should have known, (1) that he has been injured, and (2) that his injury has been caused by another's conduct.'" *Haines*, 830 A.2d at 585 (quoting *Bradley*, 633 A.2d at 194).

Misericordia will not be granted judgment on the pleadings on timeliness grounds. Dalgic filed the instant action in this Court on March 11, 2016. (*See* Doc. 1, *generally*). Dalgic alleges that on March 18, 2014, less than two (2) years before this case was commenced, he received a letter from USCIS stating that his OPT application was denied because Dessoye prematurely recommended him for OPT on July 24, 2013. (*See* Doc. 24, ¶ 55). Prior to that date, however, Dalgic avers that Dessoye concealed the fact that she had untimely recommended him for OPT in July 2013. (*See id*. at ¶ 46). Accordingly, because Dessoye concealed this fact from him, Dalgic alleges that he did not know or have reason to know that his OPT application would be denied until he received the March 18, 2014 letter from USCIS. (*See id*. at ¶ 46, 57-58). Viewing the facts in the light most favorable to Dalgic, he was unaware of and did not have any reason to suspect any errors were made in connection with his OPT application until he received the denial letter on March 18, 2014. Therefore, based on the allegations in the Second Amended Complaint, Dalgic timely filed this action within the applicable limitations period.

### III. Conclusion

For the above stated reasons, Defendant Misericordia University's Motion for Judgment on the Pleadings (Doc. 26) will be denied.

An appropriate order follows.

September 29, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge